# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ANDRIA BERGER,

                                                Plaintiff,

          -v.-                                              6:16-CV-1277 (LEK/ATB)

NYS OFFICE FOR PEOPLE WITH
DEVELOPMENTAL DISABILITIES, et al.,

                                                Defendant.

ANDRIA BERGER, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff Andria Berger. (Dkt. Nos. 1, 2).

## I.    IFP Application

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiffs' complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

## II. Facts

Plaintiff states that she is bringing this action pursuant to Title VII of the Civil

2

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Although she has used a form specifically for Title VII cases, she also appears to allege "disability" discrimination. (Complaint ("Compl.") ¶ 6(F)) (Dkt. No. 1). A claim for disability discrimination would be brought under the Americans With Disabilities Act, ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff seems to list some New York State statutes in the "factual" portion of her complaint. (Compl. "Facts" at 2) (Dkt. No. 1-1). Plaintiff states that she is raising "NY General Business Law 349"[1] as well as two Penal Law sections – NY Penal Law § 240.24 and 175.30.[2] (Facts at 2).

Plaintiff's form-complaint indicates that the defendants' conduct was discriminatory based upon her sex, "disability," unequal terms and conditions of employment," retaliation, and "constructive discharge." (Compl. ¶ 6). The form-complaint also asks for the date on which the Equal Employment Opportunity Commission ("EEOC") issued plaintiff a "Right-to-Sue" ("RTS") letter. (Compl. ¶ 11). Plaintiff answered that she received the RTS letter "on or about August 2016," however, plaintiff has neglected to attach the letter to his complaint as indicated on the form-complaint. Thus, plaintiff's complaint is incomplete.

The Fact section of the complaint contains two subsections. First, plaintiff appears to have summarized her claims in the first two pages. (Facts at 1-2). The rest of

---

[1] N.Y. Gen. Bus. Law § 349 is entitled "Deceptive acts and practices unlawful." The statute provides that the Attorney General has a right of action to enjoin persons or businesses that violate the statute and obtain any applicable restitution. *Id.* § 349(b). The statute also provides for a private right of action by someone aggrieved by the statute for damages up to $50.00. In its discretion, the court may increase the damages up to $1000.00.

[2] Although plaintiff refers to this statute as "Reckless Endangerment," N.Y. Penal Law § 240.24 is Harassment in the Second Degree, and section 175.30 is Offering a False Instrument for Filing.

3

the complaint includes additional details under the "cause of action" ("COA") headings. (Facts at 3-24). There are nine causes of action, and plaintiff has numbered the paragraphs of her COAs. Thus, the court will refer to the COAs with the paragraph numbers as assigned by plaintiff.

Plaintiff states that she has been working for New York State since 1994, without incident until recently. In 2005-2006, plaintiff transferred from a position with the New York State Office of Mental Health ("OMH") to a position with the New York State Office for People with Developmental Disabilities ("OPDD"). (Facts at 1). Plaintiff alleges that on August 29, 2015, defendant Lafountain "instructed the plaintiff to tend to a gender based work assignment, consequently denying the plaintiff . . . her earned employment benefit with regard to seniority." (*Id.*) It appears that plaintiff is claiming that defendant Lafountain transferred plaintiff to work at a location other than her permanent work assignment[3] in violation of Title VII and various New York State laws and OPDD policies.

Plaintiff alleges that on September 1, 2015, defendant Lafountain breached numerous OPDD "policies and procedures, the collective bargaining, labor/ management agreement and varying NYS laws to create . . . work hardships for plaintiff." (Facts at 1-2). Plaintiff alleges that defendant Lafountain refused to discuss proper policies with plaintiff and retaliated against her. Plaintiff alleges that defendant Lafountain is guilty of "reckless endangerment," in violation of New York Penal Law § 240.24. (Facts at 2).

---

[3] Plaintiff was apparently assigned to work at a group home on Benedict Road, while the allegedly discriminatory re-assignment was to a home on Church Street.

4

Plaintiff also claims that on November 5, 2015, defendant Bill Loya, the plaintiff's union representative "refused his duty to represent the plaintiff," in violation of New York State General Business Law § 349. (*Id.*) Plaintiff claims that both defendant Lafountain and defendant Loya lied to the New York State Division of Human Rights during its review of plaintiff's case on March 17, 2015, in violation of New York State Penal Law § 175.30. (*Id.*)

Finally, plaintiff alleges that she resigned due to unsafe and dangerous working conditions and claims that OPDD refused to "support a safe working environment for the plaintiff and the consumers in her care out of retaliation based on the formal complaints made by plaintiff and the intimate relationship that defendant Lafountain "shares with the Deputy Director who supervised her." (*Id.*)

Plaintiff raises the following causes of action:

1. Gender Discrimination in violation of Title VII. (Compl. ¶¶ 1-21).

2. Disability Discrimination by defendant Lafountain in violation of the ADA. (Compl. ¶¶ 22-38).

3 Retaliation by defendant Lafountain in violation of Title VII. (Compl. ¶¶ 39-66).

4. Violation of Penal Law § 260.24 by defendant Lafountain. (Compl. ¶ 67).

5. "Tort of Economical Unlawful Interference" by defendant Loya. (Compl. ¶¶ 68-80).

6. Violation of General Business Law § 349 by defendant Loya. (Compl. ¶¶ 81-86).

7. Violation of Penal Law § 175.30 by both defendants Lafountain and Loya. (Compl. ¶¶ 87-89).

8. Constructive discharge by defendant OPDD. (Compl. ¶¶ 90-114).

9. Violation of Labor Law § 191 by OPDD.[4] (Compl. ¶¶ 115-22).

## III. Title VII

### A. Legal Standards

Title VII prohibits employers from discriminating against an individual based upon "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)). At the pleading stage, plaintiff must allege "the essential elements of an employment discrimination claim." *Id.* (citing *Petane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). The plaintiff must allege that she belongs to a protected class, suffered an adverse employment action, and that the adverse action occurred under circumstances that give rise to "an inference of discriminatory intent." *Id.* (citing *Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

Title VII does not provide for individual liability, and the only proper defendant in a Title VII action is plaintiff's employer, OPDD. *Spiegel v. Schulmann*, 604 F.2d 72, 79 (2d Cir. 2010) (citing *Tomka v. Seiler Corp*, 66 F.3d 1295, 1313-14 (2d Cir. 1995),

---

[4] At the end of this section of the complaint, plaintiff also alleges in one sentence that OPDD officials "collectively refused to acknowledge Mental Hygiene Law 16.35(3) (4)." (Compl. ¶ 122). This section of the New York Mental Hygiene Law is entitled "Developmental disabilities service quality improvement demonstration program." This section directs the Commissioner to establish a demonstration program to improve the quality of care for facility clients through the increase or improvement of direct care staff at the facilities. N.Y. Mental Hygiene Law § 16.35(b). The sections cited by plaintiff are in subsection (c), which provides that the Commissioner's eligible projects may include efforts to decrease staff turn-over through wage, employee benefit improvements, or other means. Section 16.35(c)(4) provides for "other efforts related to the recruitment and retention of direct care staff that will effect the quality of care at such facility." The court has interpreted plaintiff's statement at the end of her complaint as alleging that based on the facts as stated in the complaint, the defendants are not trying to improve the quality of care at the relevant facilities in violation of this statute. However, there is no indication that there is any private right of action for any "violation" of this statute. In fact, the beginning of subsection c states that the efforts of the Commissioner "may" include the following "projects."

6

*abrogated on other grds. by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Baca Raton*, 524 U.S. 775 (1998)); *Patterson v. City of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). The same is true for the ADA. *See Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 450 (W.D.N.Y. 2006) (citing *Bliss v. Rochester City School Dist.*, 196 F. Supp. 2d 314, 339 (W.D.N.Y. 2002)). Although individuals may be liable for employment discrimination under certain sections of the New York Executive Law,[5] plaintiff has not made any state law claims under the Executive Law.[6]

Thus, to the extent that plaintiff sues either defendant Lafountain or defendant Loyd under Title VII, those claims may be dismissed as against the individual defendants. Plaintiff may still allege that her individual supervisors engaged in discriminatory conduct, but the proper defendant is OPDD.

Plaintiff alleges that on August 29, 2015, Ms. Lafountain gave plaintiff an "unfavorable" work assignment "because" plaintiff was a woman. (COA ¶ 2). Plaintiff claims that the particular work assignment, which involved going to the Church Avenue location - a different group home than the one to which she was permanently assigned - resulted in male employees of lesser seniority obtaining "plaintiff's earned, seniority status." (COA ¶ 3). The rest of the paragraphs in the first COA are plaintiff's explanation of why she believes that the one assignment was discriminatory. However, it is clear from the complaint that plaintiff is complaining of only one allegedly discriminatory incident. Plaintiff states that, in the past, male employees were assigned

---

[5] *Sutera v. Rochester City School Dist.*, No. 11-CV-6057, at *4-5 (W.D.N.Y. Aug. 26, 2014) (citations omitted).

[6] Plaintiff has made other state law claims which will be discussed below.

to work at the Church Avenue location. (COA ¶¶ 11-14). Plaintiff also states that "[o]vertime opportunities to work at the Church Ave. location before and after 8/30/15 were open to males and females equally." (COA ¶ 13). Plaintiff essentially disagreed with Ms. Lafountain's assignment and did not believe that the Church Ave. home needed another woman on that particular day. (COA ¶¶ 16-18).

Plaintiff states that Ms. Lafountain told plaintiff to "grieve" the issue, and plaintiff states that she complied by filling out a "CSEA grievance," documenting the "personal discrimination based on gender and the additional discrimination against a consumer . . . ." (COA ¶¶ 19-20). Although the court has serious doubts about the plaintiff's claim, the court will recommend that her sex discrimination claim against OPDD proceed.

### IV. <u>Retaliation/Constructive Discharge</u>

#### A. Legal Standards

Title VII protects an individual from retaliation. *Moore v. Greyhound Bus Lines*, No. 15-CV-5512, 2015 WL 6128874, at *2 (E.D.N.Y. Oct. 16, 2015). To state a claim for retaliation, the plaintiff must allege that he engaged in "protected activity by opposing an employment practice made unlawful under the relevant statute," that his employer was aware of plaintiff's protected activity, that the employer took an adverse employment action against the plaintiff, and that there was a causal connection between the adverse employment action and the protected activity. *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *Gordon v. New York City Bd. of Ed.*, 232 F.3d 111, 113 (2d Cir. 2000). Plaintiff need not establish a prima facie case of retaliation, but must at least allege

8

facts that state a plausible claim for retaliation. *Chang v. City of New York Dep't for the Aging*, No. 11 Civ. 7062, 2012 WL 1188427, at *6, (S.D.N.Y. Apr. 10, 2012) (Rep't-Rec.) (citation omitted).

An employee is "'constuctively discharged when his employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily . . . .'" *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003). Working conditions are "intolerable" when they are so difficult or unpleasant, viewed as a whole, that a "reasonable person in the employees situation would have felt compelled to resign." *Id.* at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)). *See also Monroe v. County of Orange*, No. 14-CV-1957, 2016 WL 5394745, at *18 (S.D.N.Y. Sept. 27, 2016) (quoting *Green v. Brennan*, __ U.S. __, 136 S. Ct. 1769, 1777 (2016)).

## B. Application

Plaintiff alleges that, after she filed a grievance on August 30, 2015,[7] on September 1, 2015, Ms. Lafountain "left a series of unfavorable and dangerous work assignments for plaintiff to follow which Lafountain had pre-planned." (COA ¶ 39). Plaintiff alleges that on September 4, 2015, she received confirmation that the grievance had been received.[8] (COA ¶ 21). Plaintiff then states that on 9/1/15, upon hearing of these "egregious work instructions," plaintiff became "instantaneously filled

---

[7] August 30, 2015 was a Sunday.

[8] It is unclear that Ms. Lafountain would have been aware of plaintiff's actual grievance on September 1, 2015 or anytime from August 29, 2015 until September 1, 2015. However, plaintiff does claim that Ms. Lafountain told plaintiff to file a grievance, and plaintiff told Ms. Lafountain that she was going to do so. (COA ¶ 19). Thus, for purposes of initial review, this court will assume that Ms. Lafountain was aware that plaintiff was going to file a grievance, alleging sex discrimination.

with fear and anxiety about her state of affairs at work." (COA ¶ 64). Plaintiff states that she told her immediate supervisor that she was feeling ill and left work." (*Id.*) Plaintiff states that she immediately sought medical attention. (COA ¶ 65). She then sent a second grievance, "documenting the 9/1/15 retaliation." (COA ¶ 66).

Plaintiff did not return to work after 9/1/15, and states that, during the second week of September, plaintiff asked defendant Loya how she could apply for a "'Voluntary Reduction in Work Schedule." (COA ¶ 76). When plaintiff was told that she did not qualify for such a reduction, plaintiff asked for a part-time position outside of Ms. Lafountain's supervision. (*Id.*) Plaintiff claims that she reached out to a variety of OPDD officials to "halt" Ms. Lafountain's "retaliatory efforts." (COA ¶ 91). In October of 2015, plaintiff asked James Doddemeade, the OPDD Deputy Director if plaintiff could obtain part-time work outside of Ms. Lafountain's supervision. (COA ¶ 92). Although she was told that Mr. Doddemeade would look into the possibility, by October 25, 2015, she was "without information" about any such transfer, and plaintiff was told to "call the 'staffing coordinator.'" (COA ¶ 93).

Plaintiff claims that she filed her verified complaint with the New York State Division of Human Rights on October 27, 2015. (COA ¶ 94). Plaintiff claims that she left several voice mails with the staffing coordinator, but no one returned her telephone calls. Plaintiff states that, on November 4, 2015, no one showed up for her scheduled grievance hearing. (COA ¶ 96). However, on November 9, 2015, defendant Loya called plaintiff to suggest "an employment possibility." (COA ¶ 97). Plaintiff agreed to the "prospect," and she agreed to provide a "return to work medical note for 11/21/15." (COA ¶ 97).

10

Plaintiff ultimately obtained work at another group home. (COA ¶ 108). Plaintiff states that she began work on December 2, 2015 at the new location in Clifton Park, New York. (COA ¶ 107). Plaintiff states that on December 24, 2015, she was again directed to work at an unfamiliar group home in East Greenbush, New York, an hour away from her home. (COA ¶ 108). Plaintiff claims that she was made to perform duties for which she was not qualified, and she sustained a "minor injury" attempting to lift a resident because plaintiff had never been trained to do so. (COA ¶ 109). Plaintiff claims that these assignments were in retaliation for her complaints of discrimination, and that OPDD managers and officials "supported retaliation and duress for the plaintiff." (COA ¶ 110). Plaintiff resigned on January 28, 2016, by sending in her "two week notice." (COA ¶ 111). Plaintiff seems to claim that these unfavorable assignments and the change in her working conditions were the result of her complaints about sex discrimination. Assignment to an unfavorable unit in certain circumstances has been held to be sufficient to satisfy the "adversity element" of a prima facie case of retaliation. *Harder v. New York*, 117 F. Supp. 3d 157, 166-67 (N.DN.Y. 2015) (citations omitted).

Based upon the facts as stated in the complaint, the court finds that plaintiff's retaliation and constructive discharge[9] claims survive initial review. However, this court makes no finding as to whether the claims would survive a properly supported motion to dismiss or one for summary judgment.

---

[9] The "constructive discharge" claim is part of plaintiff's Title VII retaliation claim. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985) (discussing the standard for constructive discharge under both 28 U.S.C. § 1981 and Title VII).

11

## V. ADA

### A. Legal Standards

The ADA provides for protection against discrimination based upon disability. 42 U.S.C. § 12101 *et seq*. Title I of the ADA governs employment actions; Title II covers public services and programs; and Title III governs public accommodations. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). The only section of the ADA that could conceivably apply to plaintiff's claims is Title II. 42 U.S.C. § 12182. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*.

### B. Application

In plaintiff's complaint, she alleges that due to her reassignment, a disabled resident of the group home, who is usually cared for by the plaintiff, was denied her "rehabilitation services on 8/30/15" in violation of a variety of statutes, including the ADA. (COA ¶¶ 22-38). The resident in question is not a plaintiff in this action, and Ms. Berger may assert the rights of another individual. It is well-settled that a person who has not been admitted to practice law may not represent anyone other than herself.[10] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. Plaintiff may not assert an ADA claim on behalf of another individual, particularly one who is not even a plaintiff in the action. Thus, plaintiff's attempt to

---

[10] A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case.

12

raise ADA claims based on a resident's rights, may be dismissed with prejudice.

VI. <u>**New York Penal Law "Claims"**</u>

A. **Legal Standards**

An individual plaintiff has no private right of action to enforce state criminal statutes and lacks the authority to institute a criminal investigation. *See Madden v. Abate*, 800 F. Supp. 2d 604, 606-607 (D. Vt. 2011) (existence of a criminal statute prohibiting certain conduct does not in and of itself create a civil cause of action that may be brought by the victim of that conduct); *Heicklen v. U.S. Dep't of Homeland Sec.*, No. 10 Civ. 2239, 2011 WL 3841543, at *15 (S.D.N.Y. Aug. 30, 2011) (Report-Recommendation) (citations omitted), *adopted by* 2011 WL 4442669 (S.D.N.Y. Sept. 23, 2011).

B. **Application**

Plaintiff alleges that defendant Lafountain, "inspired by her retaliation," violated New York Penal Law § 260.40. (COA ¶ 67). Even if the court were exercising supplemental jurisdiction under 28 U.S.C. 1367(a),[11] plaintiff would state no claim under New York State Penal Laws against any of the named defendants. *See also Senese v. Hindle*, No. 11-CV-72, 2011 WL 4536955, at *11-12 (E.D.N.Y. Sept. 9, 2011) (Report-Recommendation) (citing *inter alia Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) (absent guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes), *adopted by* 2011 WL

---

[11] 28 U.S.C. § 1367(a) provides that where the federal court has original jurisdiction, the court shall also have supplemental jurisdiction over state law claims that are "so related" to the claims over which the federal court has original jurisdiction, that the state law claims form "part of the same case or controversy." The court notes that it may decline to exercise jurisdiction under certain circumstances. 28 U.S.C. § 1367(c)(1)-(c)(4).

13

4529359 (E.D.N.Y. Sept. 28, 2011). Thus, to the extent that plaintiff is attempting to raise New York Penal Law claims against any defendant, they may be dismissed.

## VII. "Unlawful Interference" and NY General Business Law § 349

### A. Legal Standards

New York State provides a tort law cause of action for "Intentional Interference with Another's Performance of His Own Contract."[12] *Italverde Trading, Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187, 202-203 (E.D.N.Y. 2007) (citing inter alia Restatement (Second) of Torts Section 766A). This section provides that

> [o]ne who intentionally and improperly interferes with the performance of a contract between another and a third person by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

*Id.*

As stated above, New York General Business Law § 349 prohibits deceptive acts and practices. In order to state a claim under this section, the plaintiff must show that the defendant's act, practice, or advertisement was "consumer-oriented," was "misleading in a material respect, and plaintiff was injured as a result. *Perlman ex rel. Perlman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005).

### B. Application

Both of these claims are state law causes of action. The court would have to

---

[12] Plaintiff refers to this as a "Tort of Economical Unlawful Interference." (Fifth Claim - COA ¶¶ 68-80). The court has interpreted plaintiff's complaint liberally to assert the tort that is closest to the claims that plaintiff is attempting to make.

14

exercise supplemental jurisdiction in order to resolve these causes of action. Leaving aside the issue of whether the claims would justify exercising supplemental jurisdiction as stated above, plaintiff does not state a claim under either law.

Plaintiff appears to claim that her union representatives, including defendant Loya did not represent her properly during her grievance procedures and lied during the Division of Human Rights review. (COA ¶¶ 68-86). Plaintiff mentions Charles Barley in her complaint, but he is not a defendant. Plaintiff claims that defendant Loya called plaintiff and told her that he was in receipt of her grievance and commented on its length, but agreed to "grieve the case on the plaintiff's behalf." (*Id.*) However, when plaintiff arrived at the scheduled time and place, no one from the union was there to meet her, and she was told that the hearing had been "cancelled," apparently due to a conflict with Ms. Lafountain's schedule of which plaintiff was not informed. Plaintiff claims that defendant Loya "chose to enact deceit verses [sic] his legal duty to represent plaintiff."[13] (COA ¶ 89).

Unfortunately, plaintiff does not state a claim for "unlawful interference" because plaintiff does not assert how this defendant interfered with plaintiff's ability to perform a contract as contemplated by the law. Plaintiff also fails to state a claim under General Business Law § 349, which is a consumer protection statute, and she does not allege that the defendant's actions were "consumer-related."

---

[13] This statement appears in one of the Penal Law sections of plaintiff's complaint, but the court is reading the complaint liberally and attempting to make sense of the allegations. Since General Business Law § 349 refers to deceptive practices, plaintiff's claim that defendant Loya acted "deceitfully," could be part of that claim.

15

## VIII. <u>Labor Law § 191</u>

### A. Legal Standards

Section 191 of the New York Labor Law provides for the "timeliness of payments." N.Y. Labor Law § 191. Section 191 guarantees that the wages that an employer and employee have agreed upon be paid in a "timely manner," according to the terms of the employment. *Perez White v. Advanced Dermatology of N.Y.*, No. 15 Civ. 4858, 2016 WL 4681221, at *11 (S.D.N.Y. Sept. 7, 2016) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010)). If employment is terminated, the employer must pay wages, "no later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." N.Y. Labor Law § 191(3). *Id.* Section 191 provides a remedy for claiming that wages were not "<u>timely paid</u>." *Id.*

### B. Application

Plaintiff alleges that although she provided a notice of resignation "effective" January 28, 2016, she did not receive her last pay check until April 4, 2016. (Compl. ¶ 118-19). The court notes that plaintiff's section 191 claim appears unrelated to her discrimination claim, and it is unclear whether the court would retain supplemental jurisdiction over this claim, but at this early stage of the case, the court will recommend that the claim proceed.

Plaintiff also claims that she requested payment for her "reassignment work," including milage reimbursement which she has not received at all. The court notes that section 191 only provides a cause of action for wages that are not "timely paid." It does

not provide a remedy for "unpaid" wages. *Perez White*, 2016 WL 4681221, at *11 (citations omitted). Thus, plaintiff's claim for OPDD's failure to pay her for the reassignment work and milage may not be brought under section 191 and may be dismissed. Plaintiff alleges that while she worked for OPDD, she was "locked out of her computer" and was, therefore, denied the ability to "check her accrued vacation time against her the final wages that she received in April of 2016. (Compl. ¶ 121). There is no basis listed for plaintiff's allegations, and she may not bring this claim under section 191.

## IX. <u>Opportunity to Amend</u>

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Most of the claims for which the court is recommending dismissal should be dismissed with prejudice. There is no better pleading which can revive Penal Law, General Business Law § 349, "unlawful interference," or ADA claims as plaintiff has stated them in this complaint. However, although the court is recommending dismissal as against defendant Lafountain, the court will recommend that the dismissal be without

prejudice. If the court approves this recommendation, plaintiff should be given a limited period of time within which to submit an amended complaint for review in an effort to cure the defects in pleading as against defendant Lafountain.[14]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is

**ORDERED**, that plaintiff submit her Right-to-Sue letter within fourteen (14) days of the date of this order, together with any objections to this court's recommendations as stated below, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM** as against defendant **LAFOUNTAIN**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM** as against defendant **LOYA**, and it is

**RECOMMENDED**, that plaintiff's **SECOND, FOURTH, FIFTH, SIXTH, and SEVENTH, CAUSES OF ACTION**, be **DISMISSED IN THEIR ENTIRETY WITH PREJUDICE**, and it is

**RECOMMENDED**, that if the district court adopts this Recommendation, the plaintiff's **FIRST, THIRD, EIGHTH, and NINTH CAUSES OF ACTION**, be

---

[14] This would involve bringing New York State Human Rights Law claims against defendant Lafountain. N.Y. Exec. Law § 296. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (citations omitted) (discussing individual liability under the Human Rights Law).

allowed to proceed, and plaintiff be given thirty (30) days to file a proposed amended complaint[15] if she wishes to attempt to cure the defects in pleading as against defendant Lafountain. At the end of the thirty days, or at the end of any extended period ordered by the court at plaintiff's request, this case may be returned to me for review and any appropriate Order regarding service of the complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 8, 2016

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[15] Any proposed amended complaint should be a complete pleading, should include only the claims that have been allowed to proceed in addition to any amended claims as against Ms. Lafountain under the New York Human Rights Law, and must supercede the original complaint.