UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ANDRIA BERGER,

                                  Plaintiff,

   -against-                                              6:16-CV-1277 (LEK/ATB)

NEW YORK STATE OFFICE FOR
PEOPLE WITH DEVELOPMENTAL
DISABILITIES, *et al.*,

                                  Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On October 16, 2016, plaintiff Andria Berger commenced this employment discrimination action against her former employer, the New York State Office for People with Developmental Disabilities ("OPWDD"), as well as OPWDD employee Julie Lafountain, Civil Service Employees Association ("CSEA") Labor Relations Specialist Charles Barley, and CSEA President Bill Loya. Dkt. Nos. 1 ("Complaint"), 10 ("Second Amended Complaint"). Plaintiff alleges gender discrimination, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as violations of 42 U.S.C. § 1320a(7)(b), the Fraud Enforcement and Recovery Act ("FERA"), and multiple state laws. Presently before the Court is Defendants' motion to dismiss the Second Amended Complaint. Dkt. Nos. 22 ("Motion"), 22-1 ("Memorandum"). Plaintiff opposes the Motion. Dkt. No. 26 ("Response"). For the reasons that follow, the Motion is granted in part and denied in part.

**II.    BACKGROUND**

    **A.  Factual Background**[1]

Prior to resigning from OPWDD in 2016, Plaintiff was a New York State employee for over twenty years. SAC at 3.[2] From approximately 2006 to 2016, Plaintiff worked as a direct support professional at OPWDD. Id. At some point during her employment at OPWDD, Plaintiff received a full-time placement at OPWDD's Benedict Road Individualized Residential Alternative home, as well as "seniority status." Id.

Plaintiff's account of allegedly discriminatory behavior begins on August 29, 2015, when she was transferred from the Benedict Road location to a different OPWDD home on Church Avenue. Id. at 4; Resp. at 2. Defendant Julie Lafountain, Plaintiff's direct supervisor, told her that the reassignment was based on her gender. SAC at 4. The reassignment resulted in Plaintiff's loss of seniority status and accompanying benefits, including fringe benefits. Id. at 4–5. Plaintiff alleges that OPWDD provided a male staff member, who had less "earned seniority," the same seniority status and accompanying benefits that Plaintiff had received at the Benedict Road

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the SAC are accepted as true and form the basis of this section. E.g., Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. Of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). Further, because Plaintiff is proceeding pro se, the Court construes her Complaint liberally. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). The Court will also consider the additional factual allegations provided in Plaintiff's Response, and will construe those liberally. See Ibok v. Sector, No. 05-CV-6584, 2006 WL 302336, at *1 n.1 (S.D.N.Y. Feb. 9, 2006) ("The Court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants.").

[2] The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

location. Id. at 5. She also alleges that the Church Avenue location had no gender-based requirement for staff, and that Lafountain hired a male staff member to work at the Church Avenue location. Id. at 4–5. When Plaintiff became aware of her reassignment, she called Lafountain to complain about the assignment and express her intention to "grieve" the decision with her union. Resp. at 2.

On September 1, 2015, Plaintiff was assigned a double shift, spanning from 3:00 PM to 8:00 AM the next morning. SAC at 5. Plaintiff was denied adequate training for the double shift assignment, which involved administering medication without opportunity to rest or sleep for twenty-four hours. Id. at 6. Lafountain told Robin Ostrander, an OPWDD "frontline supervisor," to instruct Plaintiff to "go ahead and grieve this too," id., presumably after Ostrander informed Lafountain of Plaintiff's dissatisfaction with the assignment. Plaintiff described the double shift to Barley, who informed her that retaliation in the workplace at OPWDD is "just the way it is." Id.

On December 24, 2015, Plaintiff was reassigned again to a "medically frail" group home. Id. at 7. Plaintiff had not been trained for the duties involved with the assignment, and her calls for assistance were not answered. Id. After conditions at Plaintiff's final assignment did not change, she resigned on January 13, 2016. Id. at 8.

**B. Procedural History**

Plaintiff commenced this action on October 26, 2016, Compl., and moved for leave to proceed in forma pauperis, Dkt. No. 2 ("IFP Application"). On February 22, 2017, the Court granted Plaintiff's IFP Application and dismissed several of Plaintiff's causes of action and defendants Bill Loya and Charles Barley. Dkt. No. 7 ("February Order"). Plaintiff proceeded to

file an amended complaint, which restated her original Complaint. Dkt. No. 8. That document was stricken, and Plaintiff was permitted to submit a second amended complaint. Dkt. No. 9 ("March Order"). On May 17, 2017, Plaintiff filed the Second Amended Complaint, which included a right-to-sue letter from the United States Equal Employment Opportunity Commission ("EEOC"), dated August 5, 2016. SAC at 12. On July 20, 2017, Defendants filed a motion to dismiss the Second Amended Complaint. Mot. On August 7, 2017, Plaintiff filed a response in opposition to the Motion. Resp.

### III.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than a mere possibility of the alleged misconduct based on the pleaded facts, the pleader

has not demonstrated that she is entitled to relief and the action is subject to dismissal.
Id. at 678–79.

IV.   DISCUSSION

    **A. Title VII Disparate Treatment**

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–10 (1993). This initial burden is "minimal." Id. at 506.

"Disparate-treatment cases present the most easily understood type of discrimination, and occur where an employer has treated [a] particular person less favorably than others because of a protected trait." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (internal quotations and citations omitted). In order to set forth a prima facie case of disparate treatment in violation of Title VII, a plaintiff must allege that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Once the plaintiff satisfies her initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Id. If the defendant provides a

legitimate, nondiscriminatory reason for the action, "the presumption raised by the prima facie case is rebutted and drops from the case." St. Mary's, 509 U.S. at 507 (internal citations omitted).

In addition, a complaint alleging employment discrimination is subject to a "lowered standard of review . . . at the motion to dismiss stage." Ingrassia v. Health Hosp. Corp., 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015) (citing Equal Emp't Opportunity Comm'n v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014)). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "it must at a minimum assert nonconclusory factual matter sufficient" to render its claims plausible. EEOC, 768 F.3d at 254 (internal citations omitted). In particular, "what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Even though the Motion purports to address Plaintiff's disparate treatment claim, Mem. at 7, Defendants have not presented arguments challenging this claim, id. at 7–8. "[I]n the absence of convincing arguments from Defendant[s] as to why Plaintiff's claim should be dismissed, the Court declines to exercise its authority to dismiss Plaintiff's claim sua sponte." Braun v. United Recovery Sys., L.P., 14 F. Supp. 3d 159, 174 (S.D.N.Y. 2014) (citing Elektra Entm't Grp., Inc. v. Barker, 551 F. Supp. 2d 234, 240 n.6 (S.D.N.Y. 2008)). Moreover, the Court notes that the facts presented in the Second Amended Complaint appear to satisfy Plaintiff's limited burden; Plaintiff has alleged that she was reassigned to Church Avenue because of her

gender, and that she lost specific and significant employment benefits due to her reassignment. SAC at 4–5. Accordingly, the Motion is denied with respect to Plaintiff's first claim.

### B. Title VII Retaliation

Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e–3(a). "To establish a prima facie case of retaliation, an employee must show '(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a casual connection between the protected activity and the adverse employment action.'" Terry v. Ashcroft, 336 F.3d 128, 135 (2d Cir. 2003) (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)). Once the plaintiff establishes a prima facie case of retaliation, "'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011) (quoting McDonnell Douglas, 411 U.S. at 802) .

"Under 29 U.S.C. § 623(d), an individual has engaged in protected activity if he 'has opposed any practice made unlawful by this section.'" Grant v. Hazlett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir. 1989) (quoting § 623(d)). The Supreme Court has observed that, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." Crawford v. Metro. Gov. of Nashville and Davidson Cty., Tenn., 555 U.S. 271, 276 (2009) (internal citations omitted). Thus, the scope of actions

qualifying as "protected activity" for the purpose of Title VII retaliation is broad. See, e.g., Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (noting that protected activity includes "informal protests of discriminatory employment practices, including making complaints to management").

On August 29, 2015, Plaintiff complained to Lafountain, objecting to both the nature of her prospective work assignment at Church Avenue and the purported gender-based reason for the assignment. Resp. at 2. As described above, Plaintiff alleges that a series of adverse working conditions followed this complaint. While Plaintiff's description of her interaction with Lafountain is sparse, it meets the limited burden required to constitute "protected activity." See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection."); Bennett v. Progressive Corp., 225 F. Supp. 2d 190, 212 (N.D.N.Y. 2002) ("'Protected activities' include not only the filing of formal charges of discrimination, but also more informal objections of unlawful discrimination, such as making complaints to management, so long as the employee has a good faith, reasonable belief that the actions being challenged did violate anti-discrimination laws.").

Because Defendants did not challenge any other elements of Plaintiff's retaliation claim, the Court will not address them. Accordingly, the Motion is denied on this claim.

### C. Title VII Constructive Discharge

Under Title VII, "an employee who was not fired, but resigns in the face of intolerable discrimination," has a tenable constructive discharge claim if administrative remedies were exhausted prior to filing the lawsuit. Green v. Brennan, 136 S. Ct. 1769, 1774 (2016). To state a

constructive discharge claim a plaintiff must establish two basic elements. First, the former employee must allege that she "was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign." Id. at 1777 (citing P.A. State Police v. Suders, 542 U.S. 129, 148 (2004)). Second, she must show that she resigned. Id.

As described above, the Motion purports to address Plaintiff's constructive discharge claim, Mem. at 7, but again Defendants have not presented arguments challenging this claim, id. at 7–8. The Court will not dismiss Plaintiff's claim absent convincing arguments from Defendants. Braun, 14 F. Supp. 3d at 174. Therefore, the Motion is denied with respect to Plaintiff's constructive discharge claim.

### D. Section 1320a-7b

Plaintiff claims a violation of 42 U.S.C. § 1320a-7b, which "provides for civil monetary penalties for improperly filed claims" to federal health care programs. Townsend v. Highland Gen. Hosp., No. 13-CV-1603, 2014 WL 1572884, at *7 (N.D.N.Y. April 18, 2014). In support of the claim, Plaintiff points to a hearing with the New York State Division of Human Rights, at which Lafountain and Loya allegedly "made false claims to hide the improper division of taxpayer's money." SAC at 8. Plaintiff also alleges that Defendants engaged in Medicaid waste. Id. However, there is no private right of action under § 1320a-7b. See Donovan v. Rothman, 106 F. Supp. 2d 513, 516 (S.D.N.Y., 2013) ("There is no private cause of action to redress violations of the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b), the infraction of which is a crime."). Accordingly, Plaintiff's § 1320a-7b claim must be dismissed. See Townsend, 2014 WL 1572884, at *7 (dismissing a § 1320a-7b(b) claim because the provision created no private right of action).

### E. Fraud Enforcement and Recovery Act

Plaintiff also alleges a violation of FERA, which is a 2009 amendment to the False Claims Act. In support of this claim, Plaintiff cites a series of OPWDD practices that purportedly deviate from federal standards or guidance. SAC at 9–10. While FERA does permit civil actions to be filed by private persons, such claims must be brought "'in the name of the Government,' and the initiation of such a suit must begin with certain specific procedures." Ruotolo v. Fannie Mae, 933 F. Supp. 2d 512, 522 (S.D.N.Y. 2013) (citing 31 U.S.C. § 3730(b)(1)). Specifically, the complaint must be filed in camera and remain under seal for at least sixty days, and the complaint cannot be served on the defendant until ordered by the court. Id.

Here, Plaintiff followed none of these procedures. Further, a private party may not bring a FERA claim pro se. Rather, these parties are rendered "'relators,' and '[b]ecause relators lack a personal interest in False Claims Act qui tam actions, [the Second Circuit has] conclude[d] that they are not entitled to proceed pro se.'" Id. (quoting United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 93 (2d Cir. 2008)).

Given that Plaintiff failed to follow the required procedures and is proceeding pro se, her claim under FERA must be dismissed.

### F. Labor Law § 191

Plaintiff claims that Defendants violated New York Labor Law § 191 by failing to provide her last paycheck until April 2016, three months after she resigned. SAC ¶¶ 57–58. Defendants argue that OPWDD is exempt from claims relating to Labor Law § 191 because it is a state agency. Mem. at 4. Defendants are correct. See Mancuso v. Crew, 679 N.Y.S.2d 324, 324 (App. Div. 1998) ("The Supreme Court properly concluded that, pursuant to Labor Law § 190(3),

10

the Board of Education of the City of New York . . . as a State agency, is exempt from the provisions of Labor Law § 191." (internal citations omitted)). Accordingly, Plaintiff's fifth claim is dismissed.

### G. Other Claims

Plaintiff also alleges violations of three other state laws: N.Y. Executive Law § 296, N.Y. Labor Law § 740, and N.Y. Civil Service Law § 75-b. Her final claim, titled "Unfair Labor Practices," is too ambiguous to determine whether it is a state or federal claim. In support of each of these claims, Plaintiff merely states "[a]s stated herein[.]" SAC ¶¶ 59–61.

At this initial stage, plaintiffs are obligated to produce a complaint that "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007)). A complaint does not suffice if it merely supports a claims with "'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Plaintiff has failed to state any factual matter, allegations, or factual enhancement in support of the four remaining claims. Because Plaintiff has failed to support these claims with any information beyond a general reference to the rest of the Second Amended Complaint, the Court is left to infer what portions of the pleadings Plaintiff refers to in support of these claims. This fails to rise to the minimal level of support needed to satisfy Rule 8 of the Federal Rules of Civil Procedure. See DeSilva v. N. Shore-Long Island Jewish Health Sys., 770 F. Supp. 2d 497, 509 (E.D.N.Y. 2011) ("Without alleging facts that support the claim . . . , plaintiffs have not given defendants fair notice of the basis of the FLSA overtime claim as is required by Twombly and Iqbal." (quoting Sampson v. MediSys

Health Network, Inc., No. 10-CV-1342, 2011 WL 579155, at *4 (E.D.N.Y. Feb. 8, 2011))).

Therefore, claims six, seven, eight, and nine are dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 22) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to Plaintiff's claims brought pursuant to 42 U.S.C. § 1320a(7)(b), the Fraud Enforcement and Recovery Act ("FERA"), and New York state law. The Motion is otherwise **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 22, 2018
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge