UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDRIA BERGER,

                    Plaintiff,

-against-

                                              6:16-CV-1277 (LEK/ATB)

NEW YORK STATE OFFICE FOR
PEOPLE WITH DEVELOPMENTAL
DISABILITIES, *et al.,*

                    Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

On October 16, 2016, Andria Berger commenced this employment discrimination action against her former employer, the New York State Office for People with Developmental Disabilities ("OPWDD"), as well as OPWDD Treatment Team Leader Julia Lafountain, OPWDD Director of Regional Operations Timothy Humphrey, OPWDD Deputy Director James Bishop, and OPWDD Acting Commissioner Kerry A. Delaney. Dkt. Nos. 52 ("Third Amended Complaint" or "TAC"). Plaintiff alleges gender discrimination, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Presently before the Court is Defendants' motion to dismiss the Third Amended Complaint. Dkt. Nos. 65 ("Motion to Dismiss TAC"), 65-1 ("Memorandum"). Plaintiff opposes the Motion. Dkt. No. 67. ("Response"). For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## II. BACKGROUND

### A. Factual Background[1]

Many of these facts were detailed in the Court's March 22, 2018 Memorandum-Decision and Order. Dkt. No. 30 ("March 22, 2018 Order"). Though the Court now relies on Plaintiff's Third Amended Complaint, it notes that many of these facts are borrowed from Plaintiff's previous complaint, Dkt. No. 10 ("Second Amended Complaint" or "SAC"). In her Third Amended Complaint, Plaintiff introduces additional facts regarding the conduct of newly named defendants Humphrey, Bishop, and Delaney.

Prior to resigning from OPWDD in 2016, Plaintiff was an employee of New York State for over twenty years. TAC at 8. From approximately 2006 to 2016, Plaintiff worked as a direct support professional at OPWDD. Id. At some point during her employment at OPWDD, Plaintiff received a full-time placement at OPWDD's Benedict Road Individualized Residential Alternative Home, as well as "seniority status." Id.

Plaintiff alleges that the discrimination against her began on August 30, 2015, when she was transferred from the Benedict Road location to a different OPWDD facility on Church Avenue. TAC at 2. Lafountain, Plaintiff's direct supervisor, told her that the reassignment to the Church Avenue location was based on her gender. Id. The reassignment resulted in the loss of

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the TAC are accepted as true and form the basis of this section. See e.g., Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d. Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d. Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). Further, because Plaintiff is proceeding pro se, the Court construes her Complaint liberally. Harris v. Mills, 572 F.3d 66, 72 (2d. Cir. 2009).

Plaintiff's conditions and privileges of employment, including fringe benefits, based on her earned seniority status. Id. at 2–3. Plaintiff alleges that Lafountain granted a male OPWDD employee with less "earned seniority" the same seniority status and accompanying benefits that had been promised to Plaintiff at the Benedict Road location. Id. at 3. Plaintiff called Lafountain on August 30, 2015 to inform her that she was potentially violating Plaintiff's civil rights, and asked Lafountain to remedy the situation, but Lafountain refused. Id. Plaintiff informed Lafountain that she intended to file a grievance against her with the union. Id. at 3.

On September 1, 2015, Plaintiff was assigned to a double shift from 3:00 PM until 8:00 AM the following morning. Id. at 8. Plaintiff did not receive proper training for the assignment, which involved administering medications despite not having slept for twenty-four hours. Id. Lafountain told Robin Ostrander, an OPWDD "frontline supervisor" to tell Plaintiff not to bother complaining to Lafountain and to "go ahead and grieve this too." Id. at 9. Later, on December 23, 2015, Plaintiff was assigned to work at a "medically frail" group that again "had service needs that are out of the plaintiff's scope of training." Id. at 10. Plaintiff resigned from her position effective January 28, 2015. SAC at 4.

### B. Procedural History

Plaintiff commenced this action on October 26, 2016, Compl., and moved for leave to proceed in forma pauperis ("IFP"), Dkt. No. 2 ("IFP Application"). On February 22, 2017, the Court granted Plaintiff's IFP Application and dismissed several of Plaintiff's causes of action and defendants Bill Loya and Charles Barley. Dkt. No. 7 ("February 22, 2017 Order"). Plaintiff proceeded to file an amended complaint, which restated her original Complaint. Dkt. No. 8. That document was stricken, and Plaintiff was permitted to submit a second amended complaint. Dkt.

No. 9 ("March 21, 2017 Order"). On May 17, 2017, Plaintiff filed the Second Amended Complaint, which included a right-to-sue letter from the United States Equal Employment Opportunity Commission ("EEOC"), dated August 5, 2016. SAC at 12. On July 20, 2017, Defendants filed a motion to dismiss the Second Amended Complaint. Dkt. No. 22 ("Motion to Dismiss SAC"). On March 22, 2018, Defendants' Motion was granted as to Plaintiff's claims brought pursuant to 42 U.S.C. § 1320(a)(7)(b), the Fraud Enforcement and Recovery Act ("FERA"), and New York state law. March 22, 2018 Order. The Motion was otherwise denied, and Plaintiff's claims alleging disparate treatment, retaliation, and constructive discharge in violation of Title VII survived. Id. On July 19, 2018, Plaintiff filed the Third Amended Complaint, removing all claims except those alleging disparate treatment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and added defendants Humphrey, Delaney, and Bishop. TAC at 1. On October 17, 2018, Defendants filed the pending motion to dismiss the Third Amended Complaint. Mot.

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d. Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more

4

than a mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678-79.

## IV. DISCUSSION

### A. Individual Defendants

Defendants argue that Plaintiff's Title VII claims against individuals LaFountain, Humphrey, Delaney, and Bishop must be dismissed because Title VII does not allow for individual liability. Mot. at 7. Defendants are correct. See e.g., Spiegel v. Schulmann, 604 F.3d 72, 80 (2d. Cir. 2010) ("[I]n the context of employment discrimination, the retaliation provision of the ADA . . . cannot provide for individual liability."); Sheffield v. Sheriff of Rockland Cty. Sheriff Dept., 393 F.App'x. 808, 811, n.2 (2d Cir. 2010); Lore v. City of Syracuse, 670 F.3d 127, 169 (2d. Cir. 2012) ("Title VII does not impose liability on individuals."); Johnson v. A.P. Prods., 934 F. Supp. 625, 627 (S.D.N.Y. 1996) (dismissing claims against a defendant in her individual capacity because Title VII did not subject her to individual liability); Mandell v. Cty. of Suffolk & John Gallagher, 316 F.3d 368, 377 (2d Cir. 2003) (dismissing claims against defendant in his personal capacity because individual supervisors are not subject to liability under Title VII).

Plaintiff's claims against the individual defendants in their *official* capacity must also be dismissed. See e.g., Boyd v. Broome Cmty. College, 2015 WL 6962498, at *14. (N.D.N.Y. 2015) (stating that while certain district courts within the Second Circuit have held that supervisory employees may be named in their official capacities as an agent of an employer in some circumstances, more and more courts have been rejecting such claims); Garcia v. N.Y. State, 05-CV-5138, 2005 WL 2581926, at *2 (S.D.N.Y. 2005) (noting that "courts within [the

5

Second Circuit] have also generally found that individuals may not be sued in their official capacities under Title VII"); Figueora v. City of N.Y., 198 F. Supp. 2d 555, 558 n.1 (S.D.N.Y. 2002) (reasoning that "while the Second Circuit has not yet decided the issue, many courts have held that supervisors may not be sued in their official capacity [under Title VII]"); Cooper v. Morgenthau, 99-CV-11946, 2001 WL 868003, at *4 (S.D.N.Y. 2001) (noting that, "while the court of appeals has not yet ruled on this issue, the weight of authority in this circuit . . . holds that . . . Title VII . . . [does not] permit[] an individual to be held liable in his official capacity").

Accordingly, Defendant's Motion as to the claims brought against individuals is granted.

### B. Title VII Disparate Treatment

Because many of Plaintiff's claims are nearly identical to her claims in the Second Amended Complaint, much of this analysis mirrors the Court's March 22, 2018 Memorandum-Decision and Order. Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–10 (1993). This initial burden is "minimal." Id. at 506.

"Disparate-treatment cases present the most easily understood type of discrimination, and occur where an employer has treated [a] particular person less favorably than others because of a protected trait." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (internal quotations and citations omitted). In order to set forth a prima facie case of disparate treatment in violation of Title VII, a

plaintiff must allege that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Once the plaintiff satisfies her initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Id. If the defendant provides a legitimate, nondiscriminatory reason for the action, "the presumption raised by the prima facie case is rebutted and drops from the case." St. Mary's, 509 U.S. at 507 (internal citations omitted).

In addition, a complaint alleging employment discrimination is subject to a "lower standard . . . at the motion to dismiss stage." Ingrassia v. Health Hosp. Corp., 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015) (citing Equal Emp't Opportunity Comm'n v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d. Cir. 2014)). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "it must at a minimum assert a nonconclusory factual matter sufficient" to render its claims plausible. EEOC, 768 F.3d at 254 (internal citations omitted). In particular, "what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d. Cir. 2015).

Defendants argue that the sole adverse employment action alleged in Plaintiff's complaint was her reassignment to the Church Avenue location. Mot. at 7. Moreover, they argue that the

7

transfer was merely lateral, and that Plaintiff does not demonstrate that the transfer required her to "undertake materially different job duties," or that her salary, benefits, or job title changed. Mot. at 8. Plaintiff has, however, raised facts that allege a change in her employment benefits and prestige as a result of the transfer to the Church Avenue facility. TAC at 2–3. A transfer can constitute a violation under Title VII "when representing a significant change in the nature of [an employee's] work . . . ." Boyd v. Presbyterian Hosp. in City of New York, 160 F. Supp. 2d 522, 536 (quoting Rodriguez v. Bd. of Educ., 620 F.2d 362, 366 (2d. Cir. 1980)). Further, the Second Circuit has held that lateral transfers, even when unaccompanied by a loss of salary, may constitute an adverse employment action for Title VII purposes. Patrolmen's Benevolent Ass'n v. City of New York, 74 F. Supp. 2d 321, 334 (2d Cir. 1999). In de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16 (2d Cir. 1996), the Second Circuit found that the plaintiff's lateral transfer to a different unit within the Department of Social Services constituted an adverse employment action sufficient to satisfy plaintiff's *prima facie* case because plaintiff alleged that his transfer removed him from an elite division of DSS—which provided him with prestige and opportunity for professional growth—to a less prestigious unit with less room for advancement. Id. at 21; see also Morris v. Lindau, 196 F.3d 102, 113 (2d. Cir. 1999) ("To constitute an adverse employment action, a transfer must be accompanied by a negative change in the terms and conditions of employment.").

The facts present in Plaintiff's Third Amended Complaint satisfy Plaintiff's limited burden at the motion to dismiss stage. As the Court previously noted, Plaintiff alleged that she was reassigned to the Church Avenue facility because of her sex, and that she lost specific and significant employment benefits due to her reassignment, altering the terms and conditions of her

8

employment. TAC at 3; Resp. at 3; Mar. 22, 2018 Order at 6–7. While, like the plaintiff in de la Cruz, Plaintiff's "case is in this respect quite thin, the transfer arguably altered the terms and conditions of h[er] employment in a negative way." 82 F.3d at 21. Because Plaintiff's pleading alleges a significant change in the nature of her work due to the Church Avenue reassignment, Defendants' Motion is denied as to the Title VII disparate treatment claim.

### C. Title VII Retaliation

Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." § 2000e-3(a). "To establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Terry v. Ashcroft, 336 F.3d 128, 135 (2d. Cir. 2003) (internal quotation omitted). Once the plaintiff establishes a prima facie case of retaliation, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." United States v. Brennan, 650 F.3d 65, 93 (2d. Cir. 2011) (internal quotation omitted).

"Under 29 U.S.C. § 623(d), an individual has engaged in protected activity if he 'has opposed any practice made unlawful by this section.'" Grant v. Hazlett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d. Cir. 1989) (quoting § 623(d)). The Supreme Court has observed that, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the

9

employee's *opposition* to the activity." Crawford v. Metro Gov. of Nashville and Davidson Cty., Tenn., 555 U.S. 271, 276 (2009) (internal citations omitted). Thus, the scope of the actions qualifying as "protected activity" for the purpose of Title VII retaliation is broad. See, e.g., Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (noting that protected activity includes "informal protests of discriminatory employment practices, including making complaints to management").

On August 30, 2015, Plaintiff complained directly to Lafountain about the purported sex discrimination Plaintiff was facing. TAC at 7. Following this complaint, Plaintiff alleges a series of adverse employment actions initiated by Lafountain, including that Lafountain instructed Plaintiff to work a double shift for which she was inadequately trained. Id. Plaintiff's description of her interaction with Lafountain is enough to satisfy the limited burden required to constitute a "protected activity" under § 2000e-3(a). See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection."); Bennett v. Progressive Corp., 225 F. Supp 2d 190, 212 (N.D.N.Y. 2002) ("'Protected activities' include not only the filing of formal charges of discrimination, but also more informal objections of unlawful discrimination, such as making complaints to management, so long as the employee has a good faith, reasonable belief that the actions being challenged did violate anti-discrimination laws.").

Defendants assert that Plaintiff does not raise any factual allegations that her September 1, 2015 shift assignment constituted an intolerable alteration of her working conditions. Mot. at 10; see Adorno v. Port. Auth., 258 F.R.D. 217, 235 (highlighting factors to be considered in evaluating whether a work environment is hostile, including frequency of the conduct, the

conduct's severity, and whether the conduct unreasonably interferes with an employee's ability to perform the functions of the job) (citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 75 (2d. Cir. 2001)). But Plaintiff describes conditions that could be considered "intolerable," including that she had to administer medications despite not sleeping for over 24 hours and was denied facility-specific training—issues that could very well constitute "unreasonable interfere" with her ability to perform her job. TAC at 7.

Thus, Plaintiff states a claim for Title VII retaliation because she alleges that she complained to Lafountain, that she was subjected to intolerable working conditions, and that there was a causal connection between the intolerable working conditions and her complaint.

### D. Title VII Constructive Discharge

Defendants argue that Plaintiff's constructive discharge claim must be dismissed because Plaintiff failed to exhaust her administrative remedies and fails to state a claim. Mot. at 11. Under Title VII, "an employee who was not fired, but resigns in the face of intolerable discrimination," has a tenable constructive discharge claim if administrative remedies were exhausted prior to filing the lawsuit. Green v. Brennan, 136 S. Ct. 1769, 1774 (2016).

Defendants first argue that because Plaintiff's constructive discharge claim arises from events that occurred after her Department of Human Rights ("DHR") filing on October 27, 2015, she is not entitled to relief for a constructive discharge allegedly taking place in December 2015 and January 2016. Id.; see Compl. at 10–11. Defendants also argue that Plaintiff is not entitled to an exhaustion exception, which allows Title VII claims not raised in the initial filing to be considered so long as they are "reasonably related" to the claims raised to the agency initially. See Tanvir v. N.Y.C. Health and Hospitals Corp., 480 F. App'x. 620, 621 (2d. Cir. 2012) ("[A]

11

claim that was not presented to EEOC may still be pursued where the claim is 'reasonably related' to the claims that were brought before the agency.").

A claim is considered reasonably related if it is (1) a claim where "the conduct complained of would fall within the scope of the [DHR] investigation which can reasonably be expected to grow out of the charge that was made," (2) "a claim alleging retaliation by an employer against an employee for filing a[] [DHR] charge," and (3) "a claim where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the [DHR] charge." Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (alteration, citation, and internal quotation marks omitted). "Thus, when a claim is simply a newly articulated cause of action that grows directly out of the factual allegations of the [DHR] charge, the claim can be brought in district court." Agosta v. Suffolk Cnty., 981 F. Supp. 2d 167, 173, 2013 WL 5960752, at *5 (E.D.N.Y. 2013) (citation and internal quotation marks omitted).

Plaintiff's claim of constructive discharge under Title VII is "reasonably related" to the original complaint made to DHR. In alleging constructive discharge, Plaintiff describes the same conduct set out in her filing with the DHR. Specifically, she alleges that she was forced to work at a "'medical frail" group home with service needs that are out of the plaintiff's scope of training," and that this was "Lafountain's directive based on gender." Compl. at 10. These are allegations of "further incidents of discrimination carried out in precisely the same manner alleged in the [DHR] charge," Williams, 458 F.3d at 70, which also alleged that "she was discriminated against on the basis of her gender when she was forced to cover a shift at another work location." See Mem. at 18 (appending DHR's decision on Plaintiff's complaint). Further, given that "[p]ro se plaintiffs are often unfamiliar with the formalities of pleading requirements"

12

and that district courts "apply a more flexible standard in determining the sufficiency of a pro se complaint," Platsky v. CIA, 953 F.2d 26, 28 (2d Cir. 1991), the Court notes that Plaintiff may have intended that the August 30, 2015 and September 1, 2015 allegations that are the subject of the DHR complaint also be part of her constructive discharge claim. But even setting those previous allegations aside, Plaintiff has pled facts sufficient to establish that her constructive discharge claim is reasonably related to her DHR filing, and she is therefore entitled to the administrative exhaustion exception.

Defendants' argument that Plaintiff failed to state a claim for constructive discharge is also unpersuasive. To state a constructive discharge claim, a plaintiff must establish two elements. First, the former employee must allege that she "was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign." Id. at 1777 (citing P.A. State Police v. Suders, 542 U.S. 129, 148 (2004)). Second, she must show that she resigned. Id. Here, Plaintiff has alleged facts plausibly describing employment conditions that would have led someone in a similar situation as her to resign, namely that she was forced to work in a medical setting outside the scope of her training and that she was put in this position because of her gender. Compl. at 10. There is no dispute that Plaintiff resigned. Mem. at 1. Thus, Plaintiff states a claim of constructive discharge.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 65) is **GRANTED** as to all of Plaintiff's claims against defendants Lafountain, Humphrey, Bishop, and Delaney; and it is further

**ORDERED**, that Defendants' Motion is **DENIED** as to all of Plaintiff's claims against

New York State Office for People with Developmental Disabilities; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:	September 30, 2019
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge